UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ANTONIO ESTRADA, individually and on          :
behalf of all others similarly situated,

                                                       :

                         Plaintiff,
-against-                                      :
                                                              REPORT & RECOMMENDATION
LAGOS LOUNGE INC. (D/B/A LAGOS        :        22 Civ. 2123 (CM) (GWG)
RESTAURANT AND LOUNGE) and
JOHN-PAUL WADIBIA,                            :

                       Defendants.                 :

                                                       :
-------------------------------------------------------------X
**GABRIEL W. GORENSTEIN, United States Magistrate Judge**

        Plaintiff Antonio Estrada brought this action against defendants Lagos Lounge Inc.

("Lagos") and John-Paul Wadibia for violations of the New York Labor Law §§ 190 et seq.

("NYLL") and the Fair Labor Standards Act, 29 U.S.C. §§ 201 et seq. ("FLSA").  See

Complaint, filed Mar. 15, 2022 (Docket # 1) ("Compl.").  The Court has entered a default against

defendants.  See Order, filed Sept. 29, 2022 (Docket # 27) ("Default Order").  Estrada now seeks

damages pursuant to the default judgment.[1]

I. BACKGROUND

        A. Procedural History

        Estrada brought this action on March 15, 2022.  See Compl.  Lagos was served on March

28, 2022, and Wadibia was served on April 4, 2022.  Affidavit of Service, filed Mar. 28, 2022

(Docket # 9); Affidavit of Service, filed Apr. 6, 2022 (Docket # 10).  In June 2022, Estrada

---

    [1] See Proposed Findings of Fact and Conclusions of Law, filed Dec. 22, 2022 (Docket
# 38) ("PFFCL"); Declaration of Plaintiff Antonio Estrada, filed Dec. 22, 2022 (Docket # 38-3)
("Estrada Decl."); Declaration of Bryan D. Robinson, filed Dec. 22, 2022 (Docket # 38-8)
("Robinson Decl."); Declaration of Catalina Sojo, filed Dec. 22, 2022 (Docket # 38-9) ("Sojo
Decl.").

obtained certificates of default for both defendants.  Clerk's Certificate of Default, filed June 9,

2022 (Docket # 16); Clerk's Certificate of Default, filed June 9, 2022 (Docket # 18).  On

September 29, 2022, the district court granted Estrada's motion for a default judgment and

referred the case for an inquest on damages.  Order, filed Sept. 27, 2022 (Docket # 27) ("Default

Order"); Order, filed Oct. 6, 2022 (Docket # 28).  The Court issued a scheduling order directing

Estrada to file proposed findings of fact and conclusions of law.  See Scheduling Order for

Damages Inquest, filed Oct. 6, 2022 (Docket # 29) ("Scheduling Order").  Estrada filed proposed

findings of fact and conclusions of law on December 22, 2022.  See PFFCL.  Defendants have

not responded to any filing in this case.

      B. <u>Facts</u>

      Lagos, which does business as Lagos Restaurant and Lounge, is a restaurant located at

306 E 49th St, New York, NY 10017.  See Compl. ¶¶ 1-2.  Wadibia has an ownership interest in

Lagos, controls Lagos, and determines the pay of its employees.  See id. ¶ 3, 20.  Wadibia and

Lagos employed Estrada.  Id. ¶ 1.  Estrada worked as a dishwasher at the restaurant, but

defendants also required him to "clean the restaurant, bar, kitchen, and bathroom[;] prepare

foods[;] take out the garbage[;] and stock up merchandise." Id. ¶¶ 4, 34.

      Estrada worked for defendants from "approximately January 2021 until on or about

September 2021."  Estrada Decl. ¶ 11; see also Compl. ¶¶ 16, 33; PFFCL ¶ 13.  From

"approximately January 2021 until on or about April 30, 2021," Estrada worked "78 to 90 hours

per week."  Estrada Decl. ¶ 15.  From "approximately May 1, 2021 until on or about September

2021," he worked "104 hours per week."  Id. ¶ 16.  Throughout Estrada's employment,

defendants paid him "a range from approximately $392.40 to approximately $810.00 per week,"

id. ¶ 18, by means of a personal check, id. ¶ 17.  This salary did not vary based on hours worked.
See Compl. ¶ 43.

Estrada was not required to maintain records of how many hours he worked until his last
month of employment, and during that last month, the machine that defendants provided to clock
his hours did not work.  Estrada Decl. ¶ 23.  To get paid, defendants also required Estrada to sign
a form misstating the number of hours he worked.  Id. ¶ 25.

Defendants did not provide Estrada with "any notice in English or in Spanish . . . of [his]
rate of pay, employer's regular pay day, and such other information as required by NYLL
§ 195(1)."  Id. ¶ 30.  Defendants also never provided Estrada with any notice "regarding
overtime and wages under the FLSA and NYLL."  Compl. ¶ 50.

## II.  LAW GOVERNING DEFAULT JUDGMENTS

In light of defendants' default, Estrada's properly pleaded allegations in the amended
complaint, except those related to damages, are accepted as true.  See, e.g., City of New York v.
Mickalis Pawn Shop, LLC, 645 F.3d 114, 137 (2d Cir. 2011) ("It is an ancient common law
axiom that a defendant who defaults thereby admits all well-pleaded factual allegations
contained in the complaint." (citation and punctuation omitted)); Finkel v. Romanowicz, 577
F.3d 79, 84 (2d Cir. 2009) ("In light of [defendant's] default, a court is required to accept all . . .
factual allegations as true and draw all reasonable inferences in [plaintiff's] favor.").

As to damages, "[t]he district court must instead conduct an inquiry in order to ascertain
the amount of damages with reasonable certainty."  Credit Lyonnais Sec. (USA), Inc. v.
Alcantara, 183 F.3d 151, 155 (2d Cir. 1999).  This inquiry requires the district court to: (1)
"determin[e] the proper rule for calculating damages on . . . a claim" and (2) "assess[ ] plaintiff's
evidence supporting the damages to be determined under this rule."  Id.

Estrada bears the burden of establishing his entitlement to the amount sought. See Trs. of Local 813 Ins. Tr. Fund v. Rogan Bros. Sanitation Inc., 2018 WL 1587058, at *5 (S.D.N.Y. Mar. 28, 2018). In the case of a default where the defendant has never appeared, "a court may base its determination of damages solely on the plaintiff's submissions." Id. (citing Fustok v. ContiCommodity Servs., Inc., 873 F.2d 38, 40 (2d Cir. 1989)). While a court must "take the necessary steps to establish damages with reasonable certainty," Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., 109 F.3d 105, 111 (2d Cir. 1997), a court need not hold a hearing "as long as it ensure[s] that there [is] a basis for the damages specified in a default judgment," Fustok, 873 F.2d at 40.

Here, the Court's Scheduling Order notified the parties that the Court might conduct the inquest into damages based upon the written submissions of the parties, but that a party may seek an evidentiary hearing. See Scheduling Order ¶ 3. No party has requested an evidentiary hearing. Moreover, because plaintiff's submissions provide a basis for an award of damages, no hearing is required.

III.  DISCUSSION

Estrada brought suit under both the NYLL and the FLSA. It is settled that while

> a plaintiff may be entitled to recover unpaid minimum wages and overtime pay under both the FLSA and the NYLL, he or she may not recover twice. Instead, where a plaintiff is entitled to damages under both federal and state wage law, a plaintiff may recover under the statute which provides the greatest amount of damages.

Ergin v. 8th Hill Inc., 2022 WL 1037655, at *3 (S.D.N.Y. Apr. 6, 2022) (citing Gonzalez Mercedes v. Tito Transmission Corp., 2018 WL 7291452, at *5 (S.D.N.Y. Dec. 6, 2018)), adopted, 2022 WL 1256996 (S.D.N.Y. Apr. 26, 2022). Because the NYLL provides for the greater recovery in Estrada's case, we address only the provisions of the NYLL.

A. <u>Unpaid Minimum Wage</u>

Estrada has failed to plead or otherwise submit evidence addressing whether defendants had eleven or more employees such that they could be considered a "large employer."  N.Y. Lab. Law § 652(1)(a)(i).  Accordingly, Estrada should be compensated at the rate for small employers in New York City.  <u>See</u> <u>Anzurez v. La Unica Caridad Inc.</u>, 2021 WL 2909521, at *4 (S.D.N.Y. July 12, 2021); <u>Maria v. Rouge Tomate Chelsea LLC</u>, 2020 WL 6049893, at *4 (S.D.N.Y. Oct. 14, 2020).  For the entirety of Estrada's employment, this rate was $15.00 per hour.  <u>See</u> N.Y. Lab. Law § 652(1)(a)(ii).

Estrada was paid weekly, rather than hourly.  <u>See</u> Estrada Decl. ¶¶ 18, 20, 23-25.  Under N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5(b):

> If an employer fails to pay an employee an hourly rate of pay, the employee's regular hourly rate of pay shall be calculated by dividing the employee's total weekly earnings, not including exclusions from the regular rate, by the lesser of 40 hours or the actual number of hours worked by that employee during the work week.

Throughout his employment, Estrada was paid "approximately $392.40 to approximately $810.00 per week."  Estrada Decl. ¶ 18.  Plaintiff proposes the average of these figures — $601.20 — as his effective pay.  <u>See</u> Damages Chart, annexed as Exhibit E to PFFCL (Docket # 38-5) ("Pl. Damages Chart").  Given the range in payments, we will accept this average as a basis for calculating damages.  Pursuant to the formula in N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5(b), this translates to an hourly rate of $15.03 ($601.20 / 40 = $15.03), which is above the applicable minimum wage of $15.00 for the period of employment.  See N.Y. Lab. Law §652(1)(a)(ii).  Thus, Estrada should not be awarded any damages for unpaid minimum wage.

B.  Unpaid Overtime

The NYLL requires an employer to pay "an employee for overtime at a wage rate of 1 1/2 times the employee's regular rate for hours worked in excess of 40 hours in one workweek." N.Y. Comp. Codes R. & Regs. tit. 12, § 146-1.4.  Where the plaintiff has been paid below the minimum wage, "the appropriate overtime rate [is] one-and-a-half times the minimum wage rate." Nana v. Le Viking LLC, 2019 WL 3244181, at *3 (S.D.N.Y. July 19, 2019).  However, where the plaintiff is paid consistent with or more than the applicable minimum wage, the appropriate overtime rate is 1.5 times the plaintiff's regular rate.  See, e.g., Ramos v. Guaba Deli Grocery Corp., 2021 WL 5563714, at *9 (S.D.N.Y. Nov. 29, 2021).  As noted above, in instances where Estrada was paid weekly rather than hourly, we compute Estrada's "regular rate" (and his corresponding overtime rate) by reference to the formula set forth in N.Y. Comp. Codes R. & Regs. tit. 12 § 146-3.5(b).

Based on his sworn representations, Estrada worked well over 40 hours per week.  See Estrada Decl. ¶¶ 15-16.  From his starting point on January 1, 2021 (as stated in Pl. Damages Chart) through April 30, 2021, Estrada "worked from approximately 3:00 p.m. to 5:00 p.m. until on or about [sic] 5:00 a.m. to 6:00 a.m., 4 days a week and from approximately 8:00 a.m. to 9:00 a.m. until on or about [sic] 5:00 a.m. to 6:00 a.m., 2 days a week."  Estrada Decl. ¶ 15.  From May 1, 2021 through the end date that is stated to be September 1, 2021 (see Pl. Damages Chart), Estrada "worked from approximately 3:00 p.m. to 5:00 p.m. until on or about [sic] 5:00 a.m. to 6:00 a.m., 3 days a week and from approximately 8:00 a.m. to 9:00 a.m. until on or about [sic] 5:00 a.m. to 6:00 a.m., 2 days a week."  See Estrada Decl. ¶ 16.  Estrada has totaled the hours worked during these periods, but he appears to have made errors.  Specifically, while Estrada states that the total weekly hours in the first period amounted to "78 to 90" hours per week, id.

¶ 15, in fact the time ranges he provides reflect work of 88 to 104 hours per week.  Similarly, while Estrada states that the second period amounted to "typically 104 hours per week,"  id. ¶ 16, the time periods in fact add up to 76 to 89 hours a week.  We will use the average number of hours in the schedule Estrada has actually sworn to and take the midpoint of each figure to determine the weekly hours.  Thus, for the period of January 1, 2021 through April 30, 2021, Estrada has shown he worked an average of 96 hours per week for 17 weeks.  For the period of May 1, 2021 through September 1, 2021, Estrada has shown he worked an average of 82.5 hours per week for 17 and a half weeks.  After figuring for the regular time of 40 hours per week for which Estrada was appropriately compensated, we determine that Estrada worked 56 hours of overtime per week from January 1 through April 30, 2021, and 32.5 hours of overtime per week from May 1 through September 1, 2021.

In sum, Estrada worked 1,520.75 overtime hours ((56 * 17) + (32.5 * 17.5)) for which he was insufficiently compensated.  At the applicable overtime rate of $22.50, Estrada is entitled to $34,216.88 in unpaid overtime.

C.  Spread of Hours

Under the NYLL, an employee is entitled to an extra hour's pay at the minimum wage rate for any day for which "the spread of hours exceeds 10."  N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6(a).  "The spread of hours is the length of the interval between the beginning and end of an employee's workday."  Id. § 146-1.6.  "Effective as of January 1, 2011, the NYLL was amended such that the spread of hours regulations 'apply to all employees in restaurants and all-year hotels, regardless of a given employee's regular rate of pay.'"  Andrade v. 168 First Ave. Rest. Ltd., 2016 WL 3141567, at *5 (S.D.N.Y. June 3, 2016) (quoting N.Y. Comp. Codes R. & Regs. tit. 12 § 146-1.6(d)), adopted, 2016 WL 3948101 (S.D.N.Y. July 19, 2016).

Estrada worked more than ten hours per day for each day of his employment, which lasted for 243 days.  See Estrada Decl. ¶¶ 15-16; Pl. Damages Chart.  To calculate the spread of hours, we multiply the number of days Estrada worked more than ten hours by the statutory minimum wage for the relevant period.  For the relevant period of employment, the applicable minimum wage was $15.00.  Thus, Estrada is entitled to $3,645.00 for unpaid spread of hours.

      D.  Liquidated Damages

Estrada seeks liquidated damages for his unpaid wages and spread of hours.  See PFFCL ¶ 43.  "The NYLL provides for a liquidated damages award equal to 100 percent of the plaintiff's actual damages, 'unless the employer proves a good faith basis to believe that its underpayment of wages was in compliance with the law.'"  Callender v. Panabori Food Corp., 2018 WL 4565876, at *13 (S.D.N.Y. July 11, 2018) (quoting N.Y. Lab. Law §§ 198(1)(a), 663(1)), adopted, 2018 WL 3728931 (S.D.N.Y. Aug. 6, 2018).  Defendants defaulted and therefore have not provided any evidence to suggest they had a good faith basis to believe their underpayment complied with the law.  Accordingly, based on the lack of "proof before the Court that Defendants acted in good faith," Estrada should be awarded 100% of his "unpaid wages, which includes unpaid minimum wage, unpaid overtime, and unpaid spread-of-hours."  Villanueva v. 179 Third Ave. Rest. Inc., 500 F. Supp. 3d 219, 239 (S.D.N.Y. 2020).  This amounts to $37,861.88.

      E.  Failure to Provide Notices and Wage Statements under NYLL

N.Y. Lab. Law § 195(1) requires an employer at the time of hiring to "provide his or her employees, in writing in English and in the language identified by each employee as [their] primary language," notice of

> the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; allowances, if any, claimed as part of

the minimum wage, including tip, meal, or lodging allowances; . . . the regular pay day designated by the employer in accordance with section one hundred ninety-one of this article; the name of the employer; any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

Id. § 195(1)(a); accord Rouge Tomate, 2020 WL 6049893, at *5-6.

The notice must also state an employee's regular hourly rate and overtime rate of pay. N.Y. Lab. Law § 195(1)(a). Since February 25, 2015, the statutory damages for violating the notice requirement have been up to $50 per workday for a maximum of $5,000.00. N.Y. Lab. Law § 198(1)(b). The award for a violation of section 195(1) is permissive, not mandatory. See Pugh v. Meric, 2019 WL 2568581, at *2 (S.D.N.Y. June 20, 2019) ("The use of the word 'may' in NYLL § 198(1-b) indicates that recovery of damages under this sub-section is not automatic, particularly in light of the contrasting use of 'shall' in Section 198(1-d)."). Estrada alleged that defendants did not provide him with the notice required by N.Y. Lab. Law § 195(1). See Compl. ¶¶ 50, 53. Given the length of his employment with defendants, see Estrada Decl. ¶¶ 15-16, Estrada would be eligible for up to $5,000.00 in statutory damages, see N.Y. Lab. Law § 198(1)(b).

A separate statute requires employers to "furnish each employee with a statement with every payment of wages," which must include, inter alia, the rate of payment, the gross wages provided, and the applicable overtime rate. N.Y. Lab. Law § 195(3). Defendants did not provide Estrada with an accurate statement of wages as required by N.Y. Lab. Law § 195(3), see Compl. ¶¶ 51-52, and Estrada has therefore established that defendants violated N.Y. Lab. Law § 195(3). Since February 27, 2015, the statute provides for a penalty of $250 for each workday that the

violations occurred, not to exceed $5,000.00.  <u>See</u> N.Y. Labor Law § 198(1)(d).  This penalty is "mandatory."  <u>Pugh</u>, 2019 WL 2568581, at *2.

Estrada cannot recover these sums here, however, because his complaint contains no allegations as to any harm that these violations caused him.  In <u>TransUnion LLC v. Ramirez</u>, 141 S. Ct. 2190 (2021), the Supreme Court held that "[o]nly those plaintiffs who have been <u>concretely harmed</u> by a defendant's statutory violation may sue that private defendant over that violation in federal court."  <u>Id.</u> at 2205 (emphasis in original).  With regard to the NYLL provisions, courts have held that "plaintiffs lack standing under <u>TransUnion</u> to claim violations of the NYLL wage notice and wage statement provisions where the plaintiff cannot demonstrate a tangible injury as a result of the defendant's violation of these provisions."  <u>Huerta v. 101 N. Laundromat Inc.</u>, 2023 WL 199699, at *2 (E.D.N.Y. Jan. 17, 2023); <u>accord</u> <u>Sanchez v. Trescly</u>, 2023 WL 2473070, at *1 (E.D.N.Y. Mar. 13, 2023); <u>Pastrana v. Mr. Taco LLC</u>, 2022 WL 16857111, at *7 (S.D.N.Y. Sept. 23, 2022) ("Plaintiffs have not demonstrated how their lack of notice resulted in an injury greater than Defendants' minimum wage, overtime, and spread-of-hours wage violations.  Nor have Plaintiffs identified an informational injury with consequences beyond this lawsuit.  Accordingly, Plaintiffs cannot recover under NYLL wage notice and statement provisions."), <u>adopted</u>, 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022).  Because Estrada "alleges only a technical statutory violation, and not a physical, monetary, or cognizable harm" he "lacks standing for his claims of violations of NYLL § 195(1)(a) and § 195(3) because [he] was not 'concretely harmed by [Defendants'] statutory violation[.]'"  <u>Hernandez v. 99 Thai Playground LLC</u>, 2022 WL 18539303, at *7 (S.D.N.Y. Nov. 28, 2022) (quoting <u>TransUnion LLC</u>, 141 S. Ct. at 2205), <u>adopted</u>, 2023 WL 1400626 (S.D.N.Y. Jan. 31, 2023).

F.  Prejudgment Interest

Estrada seeks prejudgment interest.  See PFFCL ¶¶ 68-69.[2]  A plaintiff who prevails on a NYLL-wage claim is entitled to prejudgment interest on any "underpayment" of wages.  See N.Y. Lab. Law § 198(1)(a); Santana v. Latino Express Rests., Inc., 198 F. Supp. 3d 285, 294-95 (S.D.N.Y. 2016); Castillo v. RV Transport, Inc., 2016 WL 1417848, at *3 (S.D.N.Y. Apr. 11, 2016).  While "a plaintiff who receives FLSA liquidated damages may not also receive pre-judgment interest[,] . . . liquidated damages under the NYLL are considered punitive in nature, thus enabling a plaintiff to recover both liquidated damages and pre-judgment interest." Villanueva, 500 F. Supp. 3d at 243.  However, "the award of prejudgment interest applies only to the amount of underpayment of wages, not the liquidated damages."  Salustio v. 106 Columbia Deli Corp., 264 F. Supp. 3d 540, 557 (S.D.N.Y. 2017).

Prejudgment interest in New York runs at the rate of nine percent per annum.  N.Y. C.P.L.R. § 5004.  The starting date from which a court computes this interest is "the earliest ascertainable date the cause of action existed."  Conway v. Icahn & Co., Inc., 16 F.3d 504, 512 (2d Cir. 1994) (quoting N.Y. C.P.L.R. § 5001(b)).  However, "[w]here such damages were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date."  N.Y. C.P.L.R. § 5001(b); see also Marfia v. T.C. Ziraat Bankasi, 147 F.3d 83, 91 (2d Cir. 1998) ("New York law leaves to the discretion of the court the choice of whether to calculate prejudgment interest based upon the date when damages were incurred or 'a single reasonable intermediate date'") (citing 155 Henry Owners Corp. v. Lovlyn Realty Co., 231 A.D.2d 559, 560-61 (2d Dep't 1996)).

---

[2]  Post-judgment interest will accrue automatically pursuant to 28 U.S.C. § 1961.

Here, Estrada's claims for unpaid wages arose on different dates from January 1, 2021 to September 1, 2021.  As is common in cases under the NYLL, <u>see</u>, <u>e.g.</u>, <u>Urena v. 0325 Tuta Corp.</u>, 2022 WL 4284879, at *8 (S.D.N.Y. Sept. 16, 2022), <u>adopted,</u> 2022 WL 17249362 (S.D.N.Y. Nov. 28, 2022), we will calculate prejudgment interest from the midpoint date of this employment period: that is, May 2, 2021.  Accordingly, Estrada is entitled to prejudgment interest on his unpaid wages damages of $37,861.88 from May 2, 2021, until the date judgment is entered.  This amounts to $9.34 per day ([37,861.88 * .09] / 365 days).

G.  <u>Attorney's Fees</u>

Estrada has prevailed on his NYLL claims and is therefore entitled to seek an award of reasonable attorney's fees.  <u>See</u> N.Y. Lab. Law § 663(4).  In determining a statutory fee award, "[t]he most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  <u>Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany</u>, 522 F.3d 182, 186 (2d Cir. 2008) (punctuation omitted) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)); <u>accord Stanczyk v. City of New York</u>, 752 F.3d 273, 284 (2d Cir. 2014).  This calculation yields a "presumptively reasonable fee," <u>Arbor Hill</u>, 522 F.3d at 183, and is commonly referred to as the "lodestar," <u>id.</u>; <u>see also</u> <u>Miroglio S.P.A. v. Conway Stores, Inc.</u>, 629 F. Supp. 2d 307, 312 (S.D.N.Y. 2009).  Using the "lodestar" method, Estrada requests $5,200 in attorneys' fees.  <u>See</u> PFFCL ¶ 72; Attorney's Bill, annexed as Exhibit F to PFFCL (Docket # 38-6) ("Time Records").

1.  <u>Reasonable Hours</u>

It is well-established that "any attorney . . . who applies for court-ordered compensation in this Circuit . . . must document the application with contemporaneous time records . . . specify[ing], for each attorney, the date, the hours expended, and the nature of the work done."

N.Y. State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983);

accord Ergin v. 8th Hill Inc., 2022 WL 828303, at *6 (S.D.N.Y. Mar. 18, 2022).  Here, Catalina

Sojo and Bryan D. Robinson, attorneys for plaintiff, have attached time records for all attorneys

and paralegals involved in this case, and they have sworn in their declarations that the records

were contemporaneously made.  See Sojo Decl.; Robinson Decl.  When reviewing such records,

courts must make "a conscientious and detailed inquiry into the validity of the representations

that a certain number of hours were usefully and reasonably expended."  Lunday v. City of

Albany, 42 F.3d 131, 134 (2d Cir. 1994) (per curiam).  The critical inquiry is "whether, at the

time the work was performed, a reasonable attorney would have engaged in similar time

expenditures."  Grant v. Martinez, 973 F.2d 96, 99 (2d Cir. 1992); accord Angamarca v. Pita

Grill 7 Inc., 2012 WL 3578781, at *12 (S.D.N.Y. Aug. 2, 2012).  In addressing this question,

courts should not, however, engage in "an ex post facto determination of whether attorney hours

were necessary to the relief obtained."  Grant, 973 F.2d at 99.

Additionally, if a court finds that claimed hours are "excessive, redundant, or otherwise

unnecessary," it should exclude those hours from its calculation of the presumptively reasonable

fee.  Hensley, 461 U.S. at 434; accord Quaratino v. Tiffany & Co., 166 F.3d 422, 426 n.6 (2d

Cir. 1999) (citations omitted).  However, as the Supreme Court noted in Hensley, "[t]here is no

precise rule or formula for making these determinations."  461 U.S. at 436.  Because "it is

unrealistic to expect a trial judge to evaluate and rule on every entry in an application," Carey,

711 F.2d at 1146, "the court has discretion simply to deduct a reasonable percentage of the

number of hours claimed 'as a practical means of trimming fat from a fee application,'" Kirsch v.

Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998) (quoting Carey, 711 F.2d at 1146).  Thus, a

district court is not required to "set forth item-by-item findings concerning what may be countless objections to individual billing items." Lunday, 42 F.3d at 134.

Here, the documents submitted by plaintiff reflect that two attorneys worked on this case: Sojo, a managing member of CSM Legal, P.C., and Robinson, an associate at CSM. See PFFCL ¶ 76; Sojo Decl.; Robinson Decl. Together, they expended 14.5 hours. See Time Records. The time records "provide detailed descriptions of the tasks completed, and the time expended on each task is reasonable." Poon v. Apple NYC Corp., 2019 WL 75674, at *11 (S.D.N.Y. Jan. 2, 2019). Moreover, the time spent on this case by Sojo and Robinson is consistent with the number of hours "routinely awarded in cases in similar postures." Id. (awarding requested 24.6 hours in an FLSA and NYLL default case with more plaintiffs and issues than the instant case); Pastrana, 2022 WL 16857111, at *13 (lowering the award time to approximately 9 hours in a similar case involving the same firm), adopted, 2022 WL 16857107 (S.D.N.Y. Nov. 10, 2022); Sevilla v. House of Salads One LLC, 2022 WL 954740, at *13 (E.D.N.Y. Mar. 30, 2022) (accepting a submission of 19.1 hours in a wage-and-hour default case involving two plaintiffs and the same firm); Montanes v. Avanti Pizza 2 Inc., 2022 WL 17820103, at *9 (E.D.N.Y. Oct. 20, 2022) (13 hours reasonable for a FLSA default case). Thus, we view the hours expended by Estrada's attorneys as reasonable.

In addition to Sojo and Robinson, paralegals worked a combined 5 hours on this matter. See Time Records.[3] "[T]asks that are 'purely clerical,' such as downloading, scanning, or copying documents and organizing files, [are] generally not compensable, whether performed by an attorney or a paralegal." Siegel v. Bloomberg L.P., 2016 WL 1211849, at *7 (S.D.N.Y. Mar.

_____

[3] The designations in the time records as "PL" and "EM" we "assume[] . . . are time entries for paralegals based on the work they performed and their requested hourly rates." Hernandez, 2022 WL 18539303, at *10.

22, 2016); <u>accord</u> <u>H.W. v. New York City Dep't of Educ.</u>, 2022 WL 541347, at *4 (S.D.N.Y.

Feb. 23, 2022); <u>Diaz v. AJE Mgmt. Corp.</u>, 2017 WL 746439, at *6 (S.D.N.Y. Jan. 10, 2017).

Here, several of the time entries reflect such work, <u>see</u> Time Records, totaling 1.2 hours.  We

find the remaining hours, 3.8, to be reasonable and consistent with the number of hours awarded

to paralegal staff in similar cases.  <u>See</u> <u>Diaz</u>, 2017 WL 746439, at *6 (granting an "award of 3.28

hours of paralegal time").

> 2. <u>Reasonable Hourly Rate</u>

In determining whether the hourly rate is reasonable, "the burden is on the fee applicant

to produce satisfactory evidence . . . that the requested rates are in line with those prevailing in

the community for similar services by lawyers of reasonably comparable skill, experience[,] and

reputation."  <u>Blum v. Stenson</u>, 465 U.S. 886, 895 n.11 (1984); <u>accord</u> <u>Savoie v. Merchants Bank</u>,

166 F.3d 456, 463 (2d Cir. 1999).

To determine an appropriate hourly rate, <u>Arbor Hill</u> directs that a court engage in the

following process:

> [T]he district court, in exercising its considerable discretion, [is] to bear in mind
> <u>all</u> of the case-specific variables that we and other courts have identified as
> relevant to the reasonableness of attorney's fees in setting a reasonable hourly
> rate.  The reasonable hourly rate is the rate a paying client would be willing to
> pay.  In determining what rate a paying client would be willing to pay, the district
> court should consider, among others, the Johnson factors; it should also bear in
> mind that a reasonable, paying client wishes to spend the minimum necessary to
> litigate the case effectively.  The district court should also consider that such an
> individual might be able to negotiate with his or her attorneys, using their desire
> to obtain the reputational benefits that might accrue from being associated with
> the case.

522 F.3d at 190 (emphasis in original).

The "Johnson factors" are those laid out in <u>Johnson v. Ga. Highway Express, Inc.</u>, 488

F.2d 714 (5th Cir. 1974).  These are:

(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the level of skill required to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the attorney's customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time limitations imposed by the client or the circumstances; (8) the amount involved in the case and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

Arbor Hill, 522 F.3d at 186 n.3 (citing Johnson, 488 F.2d at 717-19).

Arbor Hill specifically identified the following factors to be considered in determining what a reasonable, paying client would be willing to pay:

the complexity and difficulty of the case, the available expertise and capacity of the client's other counsel (if any), the resources required to prosecute the case effectively (taking account of the resources being marshaled on the other side but not endorsing scorched earth tactics), the timing demands of the case, whether an attorney might have an interest (independent of that of his client) in achieving the ends of the litigation or might initiate the representation himself, whether an attorney might have initially acted pro bono (such that a client might be aware that the attorney expected low or non-existent remuneration), and other returns (such as reputation, etc.) that an attorney might expect from the representation.

Id. at 184.

Importantly, Arbor Hill held that a court must "step[ ] into the shoes of the reasonable, paying client, who wishes to pay the least amount necessary to litigate the case effectively." Id. (emphasis added). "In other words, whether the attorneys on this case properly command the rates they seek in the marketplace is not dispositive of the rate that they are to be awarded. Rather, Arbor Hill demands that we determine the cheapest hourly rate an effective attorney would have charged." Poon, 2019 WL 75674, at *12.

Here, in addition to the time records, Estrada's proposed findings include assertions about the experience of his attorneys. See PFFCL ¶ 76. After consideration of the Johnson and Arbor Hill factors, we note that this case was not especially complex, was not contested in any form, and did not impose substantial timing demands.

The requested attorney rates are $350.00 for Catalina Sojo, see PFFCL ¶ 76(a), and $300.00 for Bryan D. Robinson, see id. ¶ 76(b).  Sojo is "the Managing Member of CSM Legal, P.C."  Id. ¶ 76(a).  Sojo "graduated with a J.D. equivalent degree from Pontificia Universidad Javeriana in Bogota, Colombia, in 2017" and "received a Master of Laws degree (LL.M.) from Cornell University School in 2019."  Id.  She joined "Michael Faillace & Associates," which is now CSM Legal, P.C., in 2020, and prior to that, she worked in intellectual property litigation and enforcement at Baker McKenzie and in-house at Viacom CBS.  Id.  Based on the information Estrada and his attorneys have provided the Court, it appears that Sojo has been litigating wage-and-hour cases for a very limited time period (approximately 3 years) and that her prior experience was only in intellectual property.  See PFFCL ¶ 76(a).  Sojo's requested rate of $350.00 is above what courts have granted her previously and is much more than the reasonable rate of attorneys with comparable experience.  See Morales v. Los Cafetales Rest. Corp., 2023 WL 375647, at *6 (E.D.N.Y. Jan. 3, 2023) (rejecting an award entirely because of insufficient records, but noting that $350.00 for Sojo "exceeds what is typically allowed"), adopted, 2023 WL 375642 (E.D.N.Y. Jan. 24, 2023); Sevilla, 2022 WL 954740, at *12 (awarding Sojo a rate of $175 an hour); Antonio v. SipSak Inc., 2022 WL 4796956, at *15 (S.D.N.Y. July 28, 2022) (awarding Sojo $225.00 an hour), adopted as modified, 2022 WL 4787739 (S.D.N.Y. Oct. 3, 2022).  The instant case was relatively simple, and Sojo was not the lead attorney on it (working 4.5 hours compared to Robinson's 10, see Time Records).  We conclude that an appropriate hourly rate for Sojo is $200.00.

Robinson "graduated from Maurice A. Deane School of Law at Hofstra University in 2018" and "attended Escuela Libre de Derecho in Mexico City, Mexico, where he obtained a diploma in Corporate Law."  See PFFCL ¶ 76(b).  Robinson previously represented civil

plaintiffs and criminal defendants in Brownsville, Texas, before practicing employment and family law in New York City.  Id.  Neither Estrada nor Robinson have stated how long he has practiced law generally or how long he has been handling wage-and-hour cases, although they have described him as an "associate at CSM Legal, P.C." and state that he completed U.S. law school almost five years ago.  Id.  Given the lack of information as to Robinson's experience in wage-and-hour cases and any indication of how long he has been admitted to the bar, we find that a rate of $175.00 per hour is appropriate.  See, e.g., Pelico v. SD Auto. Inc., 2022 WL 17820136, at *12 (E.D.N.Y. Aug. 25, 2022) ($200.00 for an associate at this firm with about two years of experience); Singh v. All Empire Bldg. Contractors, Inc., 2021 WL 3055858, at *9 (E.D.N.Y. June 30, 2021) (reducing an award to $150.00 for a junior associate in a wage-and-hour default), adopted, 2021 WL 3054963 (E.D.N.Y. July 20, 2021).  As stated above, this case was not particularly complex, Estrada has not provided much information about Robinson's experience, and his responsibilities as the lead attorney only required 10 hours, see Time Records.  Accordingly, Robinson's hourly rate is appropriately fixed at $175.00.

Finally, an hourly rate of $100.00 is considered reasonable for paralegals in this district and is regularly awarded in comparable cases.  See, e.g., Victor v. Sam's Deli Grocery Corp., 2022 WL 3656312, at *15 (S.D.N.Y. Aug. 25, 2022); Campos Marin v. J&B 693 Corp., 2022 WL 377974, at *12 (S.D.N.Y. Jan. 21, 2022); Maldonado v. Papadopoulos, 2021 WL 5363016, at *12 (S.D.N.Y. July 17, 2021); Alonso v. New Day Top Trading, Inc., 2020 WL 9815184, at *23 (S.D.N.Y. June 29, 2020); Mercedes v. Tito Transmission Corp., 2019 WL 102007, at *14 (S.D.N.Y. Jan. 4, 2019).  We find here as well the rate of $100.00 is reasonable.

Accordingly, as reflected on the chart below, Estrada is entitled to attorneys' fees in the amount of $3,030.00.

| Professional | Sojo | Robinson | Paralegals | TOTAL |
|---|---|---|---|---|
| **Hours** | 4.5 | 10 | 3.8 | 18.3 |
| **Rate** | $200.00 | $175.00 | $100.00 | |
| **Amount** | $900.00 | $1,750.00 | $380.00 | $3,030.00 |

H.  Costs

A prevailing plaintiff under NYLL is also entitled to costs, which "include those reasonable out-of-pocket expenses incurred by attorneys and ordinarily charged to their clients." See LeBlanc-Sternberg v. Fletcher, 143 F.3d 748, 763 (2d Cir. 1998) (punctuation omitted); accord Febus v. Guardian First Funding Grp., LLC, 870 F. Supp. 2d 337, 341 (S.D.N.Y. 2012). Here, Estrada seeks $947.36 in costs consisting of a $402.00 filing fee and $545.36 in service fees.  See PFFCL ¶ 72; Time Records at 2.  Such costs are generally recoverable.  See, e.g., Villanueva, 500 F. Supp. 3d at 243 (awarding costs for a filing fee and process server fees). Accordingly, Estrada should be awarded $947.36 in costs.

\*    \*    \*

In sum, the amounts to be awarded are as follows: $34,216.88 in unpaid overtime; $3,645.00 in unpaid spread of hours; $37,861.88 in liquidated damages; $3,030.00 in attorney's fees; and $947.36 in costs.  The total of these amounts is $79,701.12.  The judgment should also include prejudgment interest at a rate of $9.34 per day from May 2, 2021, until the date judgment is entered.

Additionally, Estrada requests that the damages order include a provision automatically increasing the judgment by the amount set forth in N.Y. Lab. Law § 198(4).  See PFFCL ¶ 70. N.Y. Lab. Law § 198(4) provides that:

Any judgment or court order awarding remedies under this section shall provide that if any amounts remain unpaid upon the expiration of ninety days following issuance of judgment, or ninety days after expiration of the time to appeal and no appeal is then pending, whichever is later, the total amount of judgment shall automatically increase by fifteen percent.

Accordingly, if any part of the judgment is unpaid at the expiration of such time, and no appeal is pending, the judgment should provide that it is increased by 15 percent.

Conclusion

For the foregoing reasons, judgment should be entered against the defendants in the amount of $79,701.12, plus interest to be calculated by the Clerk of the Court at a rate of $9.34 per day from May 2, 2021, until the date judgment is entered. The text of the judgment should provide that if the judgment is not entirely paid within 90 days of judgment, or 90 days after the expiration of appeal, whichever is later, and no appeal is pending, then the total amount of judgment shall automatically increase by 15 percent.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court. Any request for an extension of time to file objections or responses must be directed to Judge McMahon. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: April 3, 2023
      New York, New York

_____
GABRIEL W. GORENSTEIN
United States Magistrate Judge